**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| AJ's Nifty Products LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 26-cv-944 |
| | ) | |
| v. | ) | |
| | ) | |
| The Partnerships and | ) | JURY TRIAL DEMANDED |
| Unincorporated Associations | ) | |
| Identified on Schedule A, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR**
**TEMPORARY RESTRAINING ORDER**

Plaintiff AJ's Nifty Products LLC ("AJ's" or "Plaintiff"), by and through its undersigned counsel, hereby submits the following for its Motion for Temporary Restraining Order ("TRO"). Plaintiff is requesting temporary *ex parte* relief based on an action for patent infringement against the Defendants identified in Schedule A to the Verified Complaint [1] (collectively, the "Defendants"). Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's intellectual property rights, as well as to protect unknowing consumers from purchasing infringing products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully request that this Court issue an *ex parte* Temporary Restraining Order.

**I. STATEMENT OF FACTS**
**I.A. Introduction**

1.      As alleged in Plaintiff's Verified Complaint, Defendants have offered for sale and sold unauthorized and unlicensed products, namely drink caddy products, that infringe Plaintiff's United States Patent No. 11,445,840 ("the '840 Patent") through various fully interactive, commercial Internet stores operating under at least the Online Marketplace Accounts identified

-1-

in Schedule A (collectively, the "Defendant Internet Stores"). *See* Dkt. [1-1].

2.    Defendants are reaching out to do business with Texas residents by operating one or more commercial, interactive Defendant Internet Stores through which Texas residents can purchase infringing products, as shown in Schedule A-2 to the Verified Complaint [1]. *See* Dkt. [1-3]. The infringement is happening at the same time with overlap of the products' manufacture, the case involves a claim for lost profits, and Defendant Internet Stores share advertising look and feel; this collectively establishes a logical relationship between Defendants. *See* Dkt. [1] at ¶ 7. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation. *See id.*

### I.B. Plaintiff's Patent

3.    Plaintiff AJ's Nifty Products is a California Business Corporation having a principal place of business at P.O Box 3232, Laguna Hills, CA 92654. Dkt. [1] at ¶ 8.

4.    The '840 Patent was duly and legally issued on September 20, 2022. Dkt. [1] at ¶ 9. As recorded with the USPTO at reel/frame 64057/0964, the '840 Patent was assigned to Plaintiff on June 26, 2023. Dkt. [1] at ¶ 10.

5.    As lawful assignee, Plaintiff is the owner of all right, title, and interest in the "'840 Patent, including the right to recover past damages for infringement. Dkt. [1] at ¶ 11.

6.    Plaintiff's drink caddy products are loved by customers at least because of their unique design which embodies the claims of the '840 Patent. *See* Dkt. [1] at ¶ 15. A representative image of Plaintiff's products is reproduced below:



### I.C. Defendants' Unlawful Activities

7.      On information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the '840 Patent in the same transaction, occurrence, or series of transactions or occurrences. *See* Dkt. [1] at ¶ 7. They are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. *See* Dkt. [1] at ¶ 16. The infringing products, whose URL links are shown in Schedule A, infringe the claims of the '840 Patent. *See* Schedule A (Dkt. [1-1]); Dkt. [1] at ¶ 24. As discussed in Plaintiff's Verified Complaint, each of Defendants' respective Infringing Products are identical in all aspects relevant to the '840 Patent. *See* Dkt. [1] at ¶ 6; Schedule A-1 (Dkt. [1-2]).

8.      Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. *See* Dkt. [1] at ¶ 19. On information and belief, Defendants regularly create new online

marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses. *See id.* Infringers such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of enforcement efforts. *See* Dkt. [1] at ¶ 23. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to offshore bank accounts outside the jurisdiction of this Court. *See id.*

## II. LEGAL STANDARDS

Motions for temporary restraining orders are evaluated under the same standard as a preliminary injunction. *Clark v. Prichard*, 812 F.2d 991 (5th Cir. 1987). The substantive law of the Federal Circuit governs the issuance of a preliminary injunction in patent cases. *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988). The decision to grant or deny injunctive relief is an act of equitable discretion by the district court. *eBay Inc. v. MercExchange, LLC*, 554 U.S. 388, 391 (2006). In moving for a temporary restraining order, the moving party assumes the burden of establishing that "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

Federal Rule of Civil Procedure 65(b)(1) provides that a Court may issue an *ex parte* temporary restraining order against a party or its attorneys where "(a) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "(b) the movant's

attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A)-(B).

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop Defendants' ongoing exploitation and damage to Plaintiff's intellectual property rights and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, Defendants can and likely will take immediate steps to permanently alter the status quo, including but not limited to steps such as registering new e-commerce stores under new aliases and moving any assets to offshore bank accounts outside the jurisdiction of this Court. Courts across the country, including within this Circuit, have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See, e.g., Chanel, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A",* No. H-12-2085, 2012 U.S. Dist. LEXIS 114150, at *5 (S.D. Tex. Aug. 14, 2012) ("There is good cause to believe that if plaintiff proceeds on notice to defendants on this Application for TRO, defendants can easily and quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting plaintiff's ability to obtain meaningful relief"). *See also DP Creations, LLC v. Mart,* 2021 U.S. Dist. LEXIS 266076 (D. Utah 2021) ("granting relief ex parte is appropriate where foreign counterfeiters operate over the internet"); *Columbia Pictures Indus.*

*v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ("proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted."); *Gucci Am., Inc. v. Los Altos Boots, Inc.*, 2014 WL 12561613, at *4 (C.D. Cal. Aug. 27, 2014) (issuing an ex parte TRO where plaintiff alleged the foreign defendant could easily hide, destroy, conceal, or transfer the counterfeit goods and records); *Yanmar Co. Ltd. v. Baoluli Happy*, 2019 U.S. Dist. LEXIS 229708, at *3 (N.D. Ga. Nov. 25, 2019) ("Foreign parties that sell Counterfeit Products often 'disappear' when notified that their conduct is unlawful, only to set up a new online storefront under a new name, with new financial accounts."). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

### III.A Jurisdiction and venue are proper

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

To establish personal jurisdiction over a defendant, a plaintiff must satisfy both the state long-arm statute and constitutional due process. *Bullion v. Gillespie,* 895 F.2d 213 (5th Cir.1990). Because the Texas long-arm statute "confers jurisdiction to the limits of due process under the Constitution", the issue is narrowed to whether exercising personal jurisdiction over the defendant would violate due process. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). The plaintiff bears the burden of making only a prima facie showing of personal jurisdiction in the early stages of litigation. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). "For the court to exercise specific jurisdiction, the court must determine '(1) whether the defendant has . . . purposely directed its

activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Whether a defendant "purposefully directed" activities at a forum's residents turns on whether there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*, at 379. When specific jurisdiction over a defendant is based on online interactions via an Internet website, the Fifth Circuit follows the sliding scale adopted in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). The *Zippo* sliding scale comprises a spectrum of website interactivity where one end of the spectrum comprises passive websites that do "nothing more than advertise on the Internet," which, therefore, are insufficient to establish personal jurisdiction. *Id*. On the other end of the spectrum are fully interactive websites through which "a defendant clearly does business over the Internet by entering into contracts with residents of other states [and] which 'involve the knowing and repeated transmission of computer files over the Internet....'" *Id*. (citing *Zippo*, 952 F. Supp. at 1124). In the latter situation, personal jurisdiction is proper. *Id*.

Here, as stated previously, Defendants operate fully interactive e-commerce stores that invite users to purchase the Infringing Products. Defendants' e-commerce stores encourage the transmission of files and information over the internet by facilitating sales and accepting the input of billing and payment information. Further, these e-commerce stores accept payment in U.S.

dollars and funds coming from U.S.-based accounts, and they each invite orders from Texas and indicate that they will ship the Infringing Products into Texas to fill such orders. *See* Schedule A-2 (Dkt. [1-3]). Defendants have thus purposefully directed their activities at the State of Texas, and Plaintiff has been harmed as a direct result of these activities. Moreover, because Defendants have purposefully availed themselves of the benefits of doing business in Texas, it does not offend the notions of fair play and substantial justice to haul them into this Court.

Because Defendants have purposefully availed themselves of the benefits of doing business in Texas and have manifested their intent to do so; have directed their activities at Texas by maintaining online webstores structured such that they invite orders from Texas and have the capacity to fill such orders; have, on information and belief, sold and shipped Infringing Products to Texas residents within the State; and because hauling Defendants into this Court does not offend traditional notions of fair play and substantial justice; the Court may exercise specific personal jurisdiction over Defendants.

### III.B. A temporary restraining order is available and warranted
### III.B.i. There is a substantial likelihood that Plaintiff will succeed on the merits

To demonstrate that it is likely to succeed on the merits in a patent case, a Plaintiff must show "that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Tinnus Enters. v. Telebrands Corp.,* 846 F.3d 1190, 1202 (Fed. Cir. 2017).

### III.B.i.a. Defendants have infringed the '840 Patent

A defendant is liable for patent infringement if it, "without authority makes, uses, offers to sell, or sells any patent invention, within the United States or imports into the United States any patented invention during the term of the patent therefor[.]" 35 U.S.C. § 271(a). "A determination of infringement is a two-step process. The court must (1) construe the asserted

claims and then (2) compare the properly construed claims to the allegedly infringing devices."
*Pause Tech, LLC v. TiVo Inc.*, 419 F.3d 1326, 1335 (Fed. Cir. 2005) (citations omitted). In comparing utility patent claims to an accused product, a patent owner must prove that "the accused device contains each limitation of the asserted claim, or an equivalent of each limitation." *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1334 (Fed. Cir. 2003) (citations omitted).

First, all terms in the claims of the '840 Patent should be construed according to the definitions provided by the applicant in the specification, or if not explicitly defined, according to their ordinary meanings as understood by a person having ordinary skill in the art. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

Second, under the plain meaning of the claim language, Defendants' accused products infringe at least Claim 1 of the '840 Patent. Attached to Plaintiff's Verified Complaint [1] as Schedule A-1 (Dkt. [1-2]) is an exemplary, non-limiting claim chart mapping Claim 1 of the '840 Patent to an exemplary illustration of each of the Infringing Products, each pulled from product listings corresponding to the Infringing Products' respective Product ASINs ("Amazon Standard Identification Numbers").

Third, Plaintiff has not licensed or otherwise authorized Defendants to use the '840 Patent, and none of the Defendants are authorized retailers of licensed products.

Accordingly, Plaintiff is likely to succeed on the merits of its claim that Defendants have infringed the '840 Patent.

### III.B.i.b. The '840 Patent is likely to withstand challenges to its validity

"There is a strong presumption of validity for issued patents, [. . .] therefore an accused infringer who raises patent invalidity as a defense bears the burden of showing invalidity by facts supported by clear and convincing evidence." *Robotic Vision Systems Inc. v. View Engineering*

*Inc.*, 189 F.3d 1370, 1377 (Fed. Cir. 1999); *see also* 35 U.S.C. § 282. Invalidity is generally proven by demonstrating that the patented invention is either anticipated or rendered legally obvious by the prior art. *See* 35 U.S.C. §§ 102-103. Plaintiff is not aware of any evidence that would tend to anticipate or render obvious the claims of the '840 Patent. Further, various secondary considerations support the non-obviousness of the '840 Patent. *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1245 (Fed. Cir. 2010) (discussing "secondary indicia of nonobviousness" such as commercial success and copying).

Plaintiff has enjoyed significant commercial success with its patented product, which supports secondary considerations suggesting that the '840 Patent is not obvious. *See, e.g., Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1344 (Fed. Cir. 2011) ("There was substantial evidence whereby a reasonable jury could have found copying and commercial success, and could have weighed these factors in favor of nonobviousness."). As such, the '840 Patent is very likely to withstand any challenge to its validity.

Because it is highly likely that Defendants have infringed the '840 Patent and the '840 Patent is likely to withstand any challenge to its validity, Plaintiff has shown a likelihood of success on the merits of its patent infringement claim. This factor thus weighs heavily in favor of granting Plaintiff's Motion.

### III.B.ii. There is no adequate remedy at law, and Plaintiff will suffer irreparable injury in the absence of preliminary relief

Irreparable harm resulting from patent infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). At this stage, Plaintiff only needs to show that irreparable harm is likely. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also, Winter v. Natural Res.*

*Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, Plaintiff is likely to suffer irreparable harm in a number of ways, including but certainly not limited to (1) price erosion, (2) loss of customers' goodwill, (3) by being forced to compete with an infringer of its patent, and (4) reputational harm. Each of these harms, independently, constitutes irreparable harm and offers a basis on which preliminary relief should issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quotation and citation omitted). The Federal Circuit has further recognized that irreparable harm is likely where a patentee is in direct competition with an infringer. *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 872 (Fed. Cir. 2017) (affirming District Court's finding of irreparable harm where, *inter alia*, the patent owner was forced to compete directly with an infringer.).

Here, Defendants' Infringing Products occupy the exact same market niche as Plaintiff's genuine products. *See* Schedule A (Dkt. [1-1]). Plaintiff is therefore forced to directly compete with infringers of its patent, just like the Plaintiff in *Mylan, supra.* Defendants, who exploit Plaintiff's Patent without having needed to make the same capital investment in the conception, research and development, and prosecution phases of Plaintiff's Patent, operate at a distinct advantage in that they are able to unfairly undercut Plaintiff's prices. Plaintiff offers its products embodying the technology claimed in the '840 Patent at a price point of $19.99. *See* Dkt. [1] at ¶ _. This price point reflects a careful calculation of margins in view of such factors as Plaintiff's investment in its intellectual property. As shown at Schedule A-2 to Plaintiff's Verified Complaint (Dkt. [1-3]), each Defendant sells its respective Infringing Product at a lower price than Plaintiff is able to sell its genuine articles, forcing Plaintiff to choose between lowering and permanently

eroding its prices, or maintaining those carefully calculated prices at the risk of losing out to infringers in a market that should be exclusive by virtue of Plaintiff's ownership of the '840 Patent.

As noted above, Defendants' infringement erodes and devalues Plaintiff's intellectual property rights by interfering with Plaintiff's ability to exploit those rights. It is further likely to cause irreparable harm in the form of lost goodwill and damaged reputation. *See, e.g., Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (explaining that absent the requested TRO, plaintiff were likely to suffer "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *see also, Nike, Inc. v. Fujian Bestwinn Industry Co.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an ex parte temporary restraining order and seizure order, [defendant's] importation, sale, and/or offers to sell its [design]… will result in immediate and irreparable injury to [plaintiff] in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with [plaintiff's] ability to exploit the [patents].").

In each of the circumstances set forth above, there plainly exists a causal nexus between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013).

Finally, because Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary judgement is unlikely to be collectable and is therefore inadequate to compensate Plaintiff for the rampant infringement of its intellectual property. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent

injunction where the likely availability of monetary damages was in question, *citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at \*2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). Other district courts have reached the same conclusion, finding that money damages were insufficient in similar cases involving foreign infringers. *See, e.g., Aevoe Corp. v. AE Tech Co.*, No. 2:12-cv-0053, 2012 WL 760692, at \*5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods.*, 2013 WL 5910882, at \*2 ("because Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike*, 166 F.Supp.3d, at 1179 ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn").

For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). This factor thus weighs heavily in favor of granting Plaintiff's Motion.

### III.B.iii. The threatened injury to Plaintiff substantially outweighs any harm the TRO may cause to Defendants

"The district court must weigh the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted." *Metalcraft of Mayville v. Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017) (citing *Hybritech Inc. v. Abbot Labs.*, 849 F.2d

1446, 1457 (Fed. Cir. 1988)). As willful infringers, Defendants are entitled to little equitable consideration. This is because any harm to Defendants that could possibly result from a temporary restraining order is self-inflicted. Defendants took a calculated risk when they engaged in patent infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) ("the preliminary record suggests that [defendant's] losses were the result of its own calculated risk in selling a product with knowledge of [plaintiff's] patent").

Accordingly, the balance of equities tips decisively in Plaintiff's favor and this factor weighs in favor of granting Plaintiff's Motion.

### III.B.iv. The TRO is not against public policy

The public interest favors the maintenance of a well-functioning patent system. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 203 (2014). The Federal Circuit has "long acknowledged the importance of the patent system in encouraging innovation." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006). "[E]ncouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir. 1985). The Federal Circuit has further recognized that "[a]lthough the public interest inquiry is not necessarily or always bound to the likelihood of success o[n] the merits, ... absent any other relevant concerns ... the public is best served by enforcing patents that are likely valid and infringed." *Abbot Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006).

Here, Plaintiff's infringement claim is strong. The '840 Patent is valid and, as demonstrated in Schedule A-1, has clearly been infringed. Plaintiff has a high likelihood of success on the merits; and, while such a likelihood of success is not always bound to the public

interest inquiry, it plainly is here because enforcement of the '840 Patent aligns with the purposes of the patent system as recognized by the Federal Circuit and the Supreme Court. In contrast, Defendants' Infringing Products only serve to harm the public by flooding the market with a deluge of counterfeit products, the quality of which can never be guaranteed. Defendants have no investment in the intellectual property at issue and no reputation to uphold; and they are thus free to wrongfully exploit it until it is devoid of any value whatsoever, at which point they will likely find another property to exploit and destroy unless they are held accountable. As such, the public interest factor tips decidedly in favor of granting Plaintiff's Motion for Temporary Restraining Order.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

### IV.A. A temporary restraining order immediately enjoining Defendants' unauthorized and unlawful use of the '840 Patent is appropriate

Plaintiff requests a temporary injunction requiring Defendants to immediately cease making, using, offering for sale, selling, and importing the products set forth in Schedule A to the Verified Complaint and any other products not authorized by Plaintiff that infringe the '840 Patent. Such relief is necessary to stop the ongoing harm to Plaintiff's control over its rights in the '840 Patent, its reputation, and associated goodwill, as well as harm to consumers, and to prevent Defendants from continuing to benefit from their unauthorized use of Plaintiff's intellectual property. The need for *ex parte* relief is magnified in today's global economy where infringers can operate anonymously over the Internet. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to

distribute the infringing products. Many courts have authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See, e.g., Nike, Inc.* 166 F. Supp. 3d at 1178-79.

### IV.B. Preventing the fraudulent transfer of assets is appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets both to prevent Defendants from reallocating those assets to support further infringing activity, as well as to ensure that Plaintiff's right to recovery from Defendants' infringement is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance with direction issued by the Court. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless. *See* Dkt. [1] at ¶ 23.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its patent infringement claims. Plaintiff's Verified Complaint seeks, among other relief, that Defendants be permanently enjoined from further engaging in any further infringing activities. Should Defendants' assets remain unfrozen, Plaintiff has reason to believe that the assets will be transferred immediately and used in service of further infringing activities, such as by providing operating capital to successor e-commerce stores through which Defendants may continue to sell infringing products. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

Plaintiff has shown a likelihood of success on the merits, immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to off-shore bank accounts and fund additional infringement. Accordingly, an asset restraint is proper.

### IV.C. Plaintiff is entitled to expedited discovery

While parties generally may not seek discovery prior to the Rule 26(f) conference in a given matter, they may do so when permitted by court order. Fed. R. Civ. P. 26(d). Fifth Circuit Courts have employed a "good cause" or "reasonableness" test to determine whether expedited discovery is permissible, which entails analysis of factors including "the breadth of the discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests, and how far in advance of the typical discovery process the request was made." *J.P. Morgan Sec. LLC v. Stephen C. Smith*, 2022 U.S. Dist. LEXIS 75732 (M.D. La. 2022). Granting pre-conference discovery falls within the Court's "wide discretion to control the course of litigation, which includes the authority to control the scope and pace of discovery." *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).

Plaintiff respectfully requests expedited discovery to discover Defendants' email addresses and sales and financial information related to the Infringing Products. The expedited discovery requested in Plaintiff's Proposed TRO is limited in breadth to include only what is essential to serve Defendants in accordance with Rule 4(f) and prevent further irreparable harm. Plaintiff only requests information that imposes little to no burden to gather and produce. Further, the time of Plaintiff's request is not unreasonable relative to when such discovery would occur in the normal course of litigation – and is in fact crucial for timely moving this case forward. The Court's seizure and asset restraint may have little meaningful effect without the requested relief.

Accordingly, Plaintiff respectfully requests that expedited discovery be granted related to:

a.  the identities and locations of Defendants, their officers, agents, servants, employees, attorneys, and any persons acting in concert or participation with them, including all known contact information and all associated e-mail addresses;

b.  the nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the Online Marketplaces, and Defendants' financial accounts, including Defendants' sales and listing history related to their respective Online Marketplaces; and

c.  any financial accounts owned or controlled by Defendants, including their officers, agents, servants, employees, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, PayPal, Inc. ("PayPal"), eBay, Alipay, Alibaba, AliExpress, Ant Financial Services Group ("Ant Financial"), Amazon Pay, Temu, Walmart, Target, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard, VISA, Discover, and American Express).

### V. BOND

Federal Rule of Civil Procedure 65(c) provides that the Court may enter a temporary restraining order only where the movant puts up security adequate to compensate the party to be restrained should their restraint later be found to be wrongful. *See* Fed. R. Civ. P. 65(c). The amount of that security "is a matter for the discretion of the trial court." *Kaepa Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*,

569 F.2d 300, 303 (5th Cir. 1978)).  Because of the strong and unequivocal nature of Plaintiff's evidence of patent infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than ten thousand dollars ($10,000) in total.

**VI. CONCLUSION**

Due to the strong likelihood of success on the merits of Plaintiff's case and the irreparable harm that would result without a temporary restraining order, Plaintiff respectfully requests that its *ex parte* temporary restraining order be immediately granted. A Proposed Order has been filed contemporaneously through the Western District of Texas sealed document portal along with a Motion to Seal the same.

Dated: April 2, 2026                                Respectfully Submitted,

*/s/   Joseph Hooper*
A. Justin Poplin, WDTX #21598
Joseph Hooper, WDTX #77011
**AVEK IP, LLC**
7285 W. 132nd Street, Suite 340
Overland Park, KS 66213
P: (913) 499-1284
F: (913) 549-4646
jpoplin@avekip.com
jhooper@avekip.com
*Attorneys for Plaintiff*