# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

AJ'S NIFTY PRODUCTS LLC,                §
                                        §
   *Plaintiff*,                        §
                                        §
v.                                      §          No.  3:26-CV-00944-LS
                                        §
THE PARTNERSHIPS AND                    §
UNINCORPORATED ASSOCIATIONS             §
IDENTIFIED ON SCHEDULE A,               §
                                        §
   *Defendant*.                        §

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER AND DENYING MOTION FOR ELECTRONIC SERVICE

Plaintiff AJ's Nifty Products LLC sues for patent infringement sixteen foreign defendants, listed on a separately filed and sealed "Schedule A," all of which are Chinese. The docket reflects no requests for summons for any defendant, nor completed service on any defendant.

This is a classic "Schedule A" case. The Northern District of Illinois was the epicenter of "Schedule A" cases until certain judges in that district began pushing back against the extraordinary relief that plaintiffs were obtaining, usually with no support in the Federal Rules of Civil Procedure. Judge Kness in that district described the typical Schedule A case:

> Schedule A litigation commences when a plaintiff files a single case with a voluminous list of defendants attached as a separate document (the so-called "Schedule A" to the complaint). In the paradigmatic case, the Schedule A plaintiff uses this maneuver to assert IP rights against a mass of anonymous and (most often) foreign defendants, who operate stores on popular e-commerce sites and allegedly sell infringing or counterfeit products. Schedule A complaints ordinarily are drafted at a high level of generality (bordering on boilerplate) and lack specifics as to each defendant or how the defendants relate to one another. Schedule A cases are also typically brought on an ex parte basis and are accompanied by (1) a motion seeking an emergency TRO against the allegedly infringing behavior; (2) a request for a

prejudgment asset restraint; (3) a motion to keep a portion, or even all, of the proceedings sealed; and (4) a motion for electronic service of process.[1]

**1. *Ex Parte* Seizure of Defendants' Assets Based on Sealed Documents Without Notice [Doc. No. 6].**

In this case, as in all Schedule A cases, Plaintiff seeks an *ex parte* order freezing Defendants' financial assets based on sealed documents, before service of process is even requested, much less effected, and without notice. The Northern District of Illinois' Judge Seeger best explains why such requests are unwarranted:

> But in Schedule A cases, the plaintiffs' bar typically seeks remedies at law - such as statutory damages - not equitable monetary relief. The request for a remedy at law, not a remedy in equity, affects the calculus when it comes to an asset freeze.
>
> The Supreme Court has made clear that courts lack the power to issue an asset freeze at the beginning of a case, unless that party is seeking equitable monetary relief. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S. Ct. 1961, 144 L. Ed. 2d 319 (1999). In *Grupo Mexicano*, the Supreme Court held that a district court has "no authority to issue a preliminary injunction preventing [a defendant] from disposing of their assets pending adjudication of [plaintiff's] contract claim for money damages." *Id*. at 333.
>
> The Supreme Court reinforced the long-standing rule that "a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." *Id*. at 321. "[A]s a general matter [] prejudgment asset restraints are not proper simply to establish a fund from which a later award of money damages can be satisfied." *See Banister v. Firestone*, 2018 U.S. Dist. LEXIS 151180, 2018 WL 4224444, at *9 (N.D. Ill. 2018).
>
> An equitable restraint on day one might be doable if a plaintiff requested and received equitable monetary relief at the end of the case, like restitution or disgorgement of ill-gotten gains. *See Deckers Outdoor Corp. v. Unincorporated Associations Identified on Schedule A*, 2013 U.S. Dist. LEXIS 205985, 2013 WL 12314399 (N.D. Ill. 2013); *see also* 1 D. Dobbs, Law of Remedies § 4.1(1) (2d ed. 1993) ("Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. It differs in its goal or principle from damages, which measures the remedy by the plaintiff's loss and seeks to provide compensation for that loss.").

---

[1] *Eicher Motors Ltd v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 794 F. Supp. 3d 543, 546-47 (N.D. Ill. 2025) (citations omitted).

But as a practical matter, in Schedule A cases, that recovery almost never happens. Schedule A plaintiffs typically don't request and receive equitable monetary relief.

Instead, Schedule A plaintiffs rush into court, request and receive an asset freeze, and obtain a default judgment. And then, the Schedule A plaintiffs ask district courts to unfreeze the money and award statutory damages, not equitable relief. In that scenario, it is not clear to this Court that it would be appropriate to use any frozen funds for any recovery of statutory damages, because statutory damages are a remedy at law, not a remedy in equity.

Truth be told, the Schedule A plaintiffs' bar asks courts in this district to lock down assets through an asset freeze on day one of a case, and do so under seal. And then, at the end of the case, Schedule A plaintiffs simply ask the Court to bless an order requiring third parties to hand over all of the frozen funds. The Schedule A plaintiffs receive a remedy at law, not a remedy in equity, which means that there was no justification for an asset freeze in the first place.[2]

Plaintiff in this case seeks actual and statutory damages,[3] presumably to be satisfied out of Defendants' frozen funds – the very problem Judge Seeger identified. Most problematic, though, is that Plaintiff also requests expedited discovery to determine Defendants' identities and locations.[4] To obtain a TRO's extraordinary relief, a movant must demonstrate: (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.[5] And to obtain a TRO *ex parte* without notice to the affected party, the movant must show that (1) immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney must certify in writing any efforts made to give notice and the reasons why it should not be required.[6]

---

[2] *Zorro Productions, Inc. v. Individuals*, 2023 U.S. Dist. LEXIS 226550, *9-11, 2023 WL 8807254 (N.D. Ill. Dec. 20, 2023).
[3] ECF No. 1 at 8–9.
[4] ECF No. 6 at 18.
[5] *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015).
[6] Fed. R. Civ. P. 65(b).

Because a TRO is extraordinary relief, especially when sought *ex parte* without notice to the affected party, the Court denies the relief Plaintiff seeks. The Court will not order the wholescale freezing of Defendants' financial assets, *ex parte* and without notice, *when Plaintiff does not know Defendants' true identities or personal information.* Moreover, the onus on asset-freezing selection would ostensibly be on third-party Amazon, who unwittingly or unintentionally might mistakenly freeze the financial assets of innocent entities as it tries to comply with this Court's freezing order - at conceivably catastrophic cost to innocent parties. The Federal Rules of Civil Procedure, and due process, do not begin to contemplate the relief Plaintiff seeks in this regard.

Finally, the Court turns to Plaintiff's request for expedited discovery. A party generally may not seek "discovery from any source before the conference required by Rule 26(f),"[7] but courts routinely permit limited, expedited discovery for "good cause" shown.[8] "Good cause" for expedited discovery exists when "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party."[9]

District courts in this circuit have utilized the following five factors to determine whether there is "good cause": (1) whether the plaintiff has made a prima facie case of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) whether there is a central need for the subpoenaed information to advance the claim; and (5) the user's expectation of privacy.[10] "The burden of showing good cause

---

[7] Fed. R. Civ. P. 26(d)(1).

[8] *St. Louis Grp., Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) (collecting cases).

[9] *Id.* at 239 (citing *Energy Prod. Corp. v. Northfield Ins. Co.*, No. 10-0933, 2010 WL 3184232, at *3 (E.D. La. Aug. 6, 2010)).

[10] *Strike 3 Holdings, LLC v. Doe*, No. 4:22-CV-459, 2025 U.S. Dist. LEXIS 97498, 2025 WL 1483448, at *3 (E.D. Tex. May 22, 2025).

is on the party seeking the expedited discovery."[11] Moreover, requests for expedited discovery should be limited in scope[12] and courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."[13]

Setting aside whether Plaintiff has made a prima facie claim, the Court finds that four of the five good-cause factors weigh in favor of authorizing expedited discovery for Defendants' identities, locations, and contact information. The second factor is satisfied because the authorized discovery will be narrowly tailored to allow Plaintiff to obtain Defendants' contact information to effect service and advance the lawsuit.[14] The third factor is satisfied because only the platforms on which the defendants sell the infringing products possess Defendants' contact information. Finally, as to factors four and five, Defendants' contact information to effect service of process will advance this lawsuit, and Defendants' privacy expectations in their contact information are minimal because they necessarily shared it with the third-party online platforms.[15] With four (if not five) of the five factors satisfied, Plaintiff has shown good cause for early discovery of Defendants' contact information. However, the Court finds that no good-cause factor weighs in favor of authorizing expedited discovery of Defendants' financial and sales information at this time.

### 2. Electronic Service [Doc. No. 5]

Plaintiff seeks electronic service on all Defendants, whose true identities are unknown, and who may be citizens of China.

---

[11] *St. Louis Grp., Inc.*, 275 F.R.D. at 240.
[12] *Id.*
[13] *Arista Records LLC v. Doe 1–19*, 551 F. Supp. 2d 1, 6 (D.D.C. 2008).
[14] *See id.* at 6–7 (finding good cause for expedited discovery because "defendants must be identified before this suit can progress further.").
[15] *See Guest v. Leis*, 255 F.3d 325, 335–36 (6th Cir. 2001) ("Individuals generally lose a reasonable expectation of privacy in their information once they reveal it to third parties.").

As an initial matter, Plaintiff does not appear to have requested summons for or tried to effect service on *any* party. As for methods of service overseas, Rule 4 provides for foreign individuals:

(f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.[16]

Rule 4 provides for service on overseas corporations "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."[17]

Plaintiff seeks electronic service on Defendants under Rule 4(f)(3) and argues that China is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial

---

[16] Fed. R. Civ. P. 4(f).
[17] Fed. R. Civ. P. 4(h)(2).

Documents in Civil or Commercial Matters (the "Hague Convention").[18] Plaintiff does not specify whether electronic service on Chinese corporations is prohibited by the Hague Convention.

The Hague Convention does not apply if the defendant's address is "unknown."[19] Before the Court can find that an address is "unknown," the movant must exercise reasonable diligence in attempting to discover the correct address.[20] Plaintiff has not demonstrated that it has yet exercised reasonable diligence in attempting to discover Defendants' addresses. Therefore, the Court will not grant Plaintiff's motion for electronic discovery at this time.

Accordingly, Plaintiff's motion for electronic service of process [ECF No. 5] is **DENIED WITH LEAVE TO REFILE** in accordance with the Federal Rules of Civil Procedure after Plaintiff acquires expedited discovery. Plaintiff's motion for a temporary restraining order [ECF No. 6] is **GRANTED in part** and **DENIED in part**. Plaintiff may obtain expedited discovery, but all other requests for relief in its motion are denied.

It is further **ORDERED** that Plaintiff may immediately commence discovery by providing actual notice, pursuant to subpoena or otherwise, of this Order to any of the following parties:

1. The entities listed on Schedule A, their affiliates, officers, agents, servants, employees, attorneys, confederates, and any person acting in active concert or participation with them; and

2. Any platform on which the entities listed in Schedule A sell the infringing products.

The parties shall, within ten (10) business days after receipt of such notice, provide to Plaintiff expedited discovery, including copies of documents and records in such person's or entity's possession or control relating to the identities and locations of Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and any person acting in active

---

[18] ECF No. 5 at 3.

[19] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. 1, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

[20] *Compass Bank v. Katz*, 287 F.R.D. 392, 394–95 (S.D. Tex. 2012) (collecting cases).

concert or participation with them, including all known contact information and all associated email addresses.

        **SO ORDERED.**

        **SIGNED** and **ENTERED** on April 14, 2026.

**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**